UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CIVIL ACTION NO.

SAHIB SINGH ARORA, M.D.,

Plaintiff,

v.

BRADLEY T. SMITH, in his official capacity as Director, Office of Foreign Assets Control, U.S. Department of the Treasury; and JANET L. YELLEN, in her official capacity as Secretary of the U.S. Department of the Treasury,

Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Sahib Singh Arora, M.D. ("Dr. Arora"), by and through his undersigned counsel, brings this action against Defendants Bradley T. Smith, Director of the Office of Foreign Assets Control ("OFAC"), and Janet L. Yellen, Secretary of the U.S. Department of the Treasury (collectively, "Defendants"), seeking judicial review and relief from OFAC's imposition of a $4,677,552 civil monetary penalty pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the U.S. Constitution. For the reasons set forth below, OFAC's Penalty Notice dated November 24, 2025 (ENF 891989) (the "Penalty Notice") is arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to constitutional right, and unsupported by substantial evidence. Dr. Arora requests that this Court set aside the Penalty Notice, declare it unlawful, and enjoin its enforcement.

## I. INTRODUCTION

1.  This action challenges OFAC's imposition of a draconian civil penalty against Dr. Arora, a U.S. citizen and physician, for alleged violations of the Russian Harmful Foreign Activities Sanctions Regulations ("RuHSR"), 31 C.F.R. Part 587, and the Reporting, Procedures and Penalties Regulations ("RPPR"), 31 C.F.R. Part 501. The Penalty Notice stems from Dr. Arora's involvement, through King Holdings, LLC ("King Holdings"), in the purchase, renovation, and sale of real property located at 2195 Blackheath Trace, Alpharetta, Georgia (the "Blackheath Property").

2.  King Holdings acquired the Blackheath Property as a bona fide purchaser for value at a public foreclosure auction on January 3, 2023, without actual or constructive notice of its purported blocked status due to prior ownership by Karina Yurevna Rotenberg, a Specially Designated National ("SDN"). OFAC's Notification of Blocking was

defectively recorded under Georgia law, failing to provide notice. Subsequent dealings in the property were based on a good faith belief in clear title, and no economic benefit accrued to the SDN.

3. OFAC's determination that violations occurred is erroneous, as the foreclosure extinguished any blocked interest. Even if violations occurred, the penalty is excessive, disregards mitigating factors, and violates the Eighth Amendment's prohibition on excessive fines and the Fifth Amendment's Due Process Clause. OFAC's actions are arbitrary and capricious under the APA and warrant judicial intervention.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (Declaratory Judgment Act), and 5 U.S.C. §§ 701-706 (APA). The Penalty Notice constitutes final agency action reviewable under the APA.

5. Venue is proper in this District under 28 U.S.C. § 1391(e) because Dr. Arora resides in Duluth, Georgia, within this District, and a substantial part of the events giving rise to the claims occurred here, including the foreclosure, purchase, and sale of the Blackheath Property.

## III. PARTIES

6. Plaintiff Dr. Sahib Singh Arora is a U.S. citizen residing at 9440 Riverclub Parkway, Duluth, GA 30097. He is a physician and holds an ownership interest in King Holdings, a Georgia-based real estate investment company.

7. Defendant Bradley T. Smith is the Director of OFAC and is sued in his official capacity. OFAC is an agency within the U.S. Department of the Treasury responsible for administering and enforcing economic sanctions.

8. Defendant Janet L. Yellen is the Secretary of the U.S. Department of the Treasury and is sued in her official capacity.

## IV. FACTUAL ALLEGATIONS

9. On March 3, 2022, OFAC designated Rotenberg as an SDN pursuant to Executive Order 14024, blocking her property interests.

10. Rotenberg defaulted on her mortgage for the Blackheath Property, held by Wilmington Trust, N.A., a U.S.-based lender subject to the Bank Secrecy Act and OFAC regulations. Despite this, Wilmington Trust proceeded to foreclose and sell the property at a public auction on January 3, 2023, where King Holdings purchased it for value without knowledge of the blocking.

11. OFAC's September 7, 2022, Notification of Blocking was recorded but improperly indexed under Rotenberg's name, not the property's deed, rendering it ineffective under Georgia law (O.C.G.A. § 44-2-2) and failing to provide constructive notice. Standard title searches did not reveal it. Two independent title companies conducted OFAC compliance checks and cleared the title, further confirming the lack of notice.

12. On April 3, 2023, OFAC contacted Dr. Arora, asserting the property remained blocked. When Dr. Arora inquired what further action was needed, OFAC representative Patrick

Hernandez responded that nothing further was required at that time, providing misleading guidance. Despite this, King Holdings proceeded with renovations and a sale in March 2024, believing the foreclosure validly transferred title.

13. OFAC issued Prepenalty Notices ("PPNs") on February 11, 2025. Dr. Arora responded on March 25, 2025, arguing no violations occurred due to the foreclosure and lack of notice, emphasizing cooperation with OFAC and the absence of any opportunity for voluntary self-disclosure pre-purchase.

14. On November 24, 2025, OFAC issued the Penalty Notice, imposing $4,677,552 without reduction, finding two RuHSR violations and one RPPR violation, all post-April 2023. OFAC deemed the conduct "egregious" under its Enforcement Guidelines, 31 C.F.R. Part 501, App. A (as amended Sept. 13, 2024, and finalized Mar. 21, 2025).

15. The penalty exceeds the property's $1,430,000 sale price and ignores mitigating factors, such as Dr. Arora's lack of sophistication in sanctions, good faith reliance on state law, full cooperation with OFAC's requests, and the misleading guidance from OFAC. No harm was caused to sanctions objectives, as the SDN received no benefit, and Wilmington Trust, as a regulated entity, bears primary responsibility for initiating the foreclosure.

## V. CLAIMS FOR RELIEF

### COUNT I: Violation of the Administrative Procedure Act (Arbitrary and Capricious Action)

16. Under 5 U.S.C. § 706(2)(A), this Court must set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

17. OFAC's determination that the Blackheath Property remained blocked post-foreclosure is erroneous. The foreclosure, an involuntary transfer under a pre-existing security interest held by a U.S. lender, extinguished Rotenberg's interest under Georgia law. See O.C.G.A. § 23-1-19 (protecting bona fide purchasers without notice); O.C.G.A. § 23-1-20 (bona fide purchasers acquire unqualified title). OFAC's application of 31 C.F.R. § 587.202(a) to nullify the transfer exceeds its authority and conflicts with state property law. Unlike Zarmach Oil Servs. v. U.S. Dep't of the Treasury, 750 F. Supp. 2d 150 (D.D.C. 2010), which involved post-blocking voluntary transfers of personal property without a pre-existing secured interest, this case concerns an involuntary foreclosure on real property enforcing a mortgage that predated the blocking. OFAC failed to adequately distinguish or address this critical difference, rendering its action arbitrary. See also Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury, 857 F.3d 913 (D.C. Cir. 2017) (upholding OFAC penalties but emphasizing reasoned decision making).

18. OFAC failed to adequately consider the defective notice, Dr. Arora's good faith, lack of harm to sanctions objectives, and misleading guidance provided by OFAC. Its analysis of the General Factors under 31 C.F.R. Part 501, App. A, is unsupported and disregards evidence, including the absence of willful conduct, no voluntary self-disclosure opportunity (as violations were unknown pre-purchase), and minimal harm. OFAC's "egregious" finding ignores mitigating cooperation and misapplies factors.

19. The Penalty Notice is arbitrary and capricious and must be set aside.

**COUNT II: Violation of the Administrative Procedure Act (Not in Accordance with Law)**

20. OFAC's actions violate the RuHSR and RPPR by imposing liability where no violation occurred, given the bona fide purchaser status and ineffective notice. The improperly indexed Notification did not provide constructive notice under Georgia law, as improperly recorded documents fail to impart notice to subsequent purchasers. See Deljoo v. SunTrust Mortg., Inc., 284 Ga. 438, 668 S.E.2d 245 (2008) (improper indexing defeats constructive notice); Va. Highland Civic Ass'n v. Paces Props., Inc., 250 Ga. App. 72, 550 S.E.2d 128 (2001).

21. The penalty disregards due process by retroactively imposing liability without fair notice. See Exxon Mobil Corp. v. Mnuchin, 430 F. Supp. 3d 220 (N.D. Tex. 2019) (vacating OFAC penalty for lack of fair notice under the Due Process Clause). Here, the defective recording and post-purchase notification deprived Dr. Arora of fair notice, making enforcement unconstitutional and not in accordance with law.

**COUNT III: Excessive Fine in Violation of the Eighth Amendment**

22. The $4,677,552 penalty is grossly disproportionate to the alleged violations, exceeding the property's value and any harm caused, violating the Eighth Amendment's Excessive Fines Clause. See United States v. Bajakajian, 524 U.S. 321 (1998) (holding forfeitures unconstitutional if grossly disproportional to the gravity of the offense). No benefit accrued to the SDN, third-party risks were unrealized, and the penalty far exceeds any economic impact, rendering it punitive and excessive. Courts have applied this clause to civil penalties, including those under the False Claims Act. See, e.g., Yates v. Pinellas Hematology & Oncology, P.A., 21 F.4th 1288 (11th Cir. 2021) (applying Excessive Fines Clause to FCA penalties); United States v. Toth, 33 F.4th 1 (1st Cir. 2022) (applying clause to FBAR penalties).

**COUNT IV: Violation of Due Process Under the Fifth Amendment**

23. OFAC's imposition of the penalty without adequate notice violates the Fifth Amendment's Due Process Clause. The defective recording failed to provide reasonable notice, and OFAC's post-purchase assertions did not cure the defect for prior actions. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306 (1950) (requiring notice reasonably calculated to apprise interested parties); Exxon Mobil, 430 F. Supp. 3d at 236 (due process requires fair notice of prohibited conduct). OFAC's vague and misleading guidance post-contact further deprived Dr. Arora of fair notice.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare the Penalty Notice unlawful, arbitrary, capricious, and unconstitutional;

B. Set aside and vacate the Penalty Notice under 5 U.S.C. § 706;

C. Enjoin Defendants from enforcing the Penalty Notice;

D. Award costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 23rd day of January 2026.

/s/ John F. Beard III
_____
Counsel for Plaintiff, GA BAR No 049774
Beard Law Firm
5000 McGinnis Ferry Rd.
Alpharetta, GA 30005
678-825-4118
Beardlawfirmga@gmail.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CIVIL ACTION NO.

SAHIB SINGH ARORA, M.D.,

Plaintiff,

v.

BRADLEY T. SMITH, in his official capacity as Director, Office of Foreign Assets Control, U.S. Department of the Treasury; and JANET L. YELLEN, in her official capacity as Secretary of the U.S. Department of the Treasury,

Defendants.

DECLARATION OF SAHIB SINGH ARORA, M.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY OF ENFORCEMENT PENDING JUDICIAL REVIEW PURSUANT TO 5 U.S.C. § 705 AND/OR PRELIMINARY INJUNCTION

I, Sahib Singh Arora, M.D., declare as follows:

1. I am the Plaintiff in the above-captioned action. I am over the age of 18 and competent to make this declaration. The facts stated herein are based on my personal knowledge, and if called as a witness, I could and would testify competently thereto.

2. I am a physician and hold an ownership interest in and manage King Holdings, LLC ("King Holdings"), a Georgia-based real estate investment company. I reside in Duluth, Georgia.

3. On January 3, 2023, King Holdings purchased the real property located at 2195 Blackheath Trace, Alpharetta, Georgia (the "Blackheath Property") at a public foreclosure auction conducted by Wilmington Trust, N.A., a regulated U.S. financial institution. I believed, in good faith, that this purchase transferred clear and marketable title to King Holdings. After the purchase, two independent title insurance companies conducted standard due diligence, including OFAC compliance checks, and cleared the title with no indications of any blocked status or sanctions issues.

4. I had no actual knowledge that the Blackheath Property was previously owned by Karina Yurevna Rotenberg (an individual later identified to me as a Specially Designated National) or that it was purportedly blocked property until OFAC contacted me on or about April 3, 2023—months after the purchase.

5. After OFAC's contact, I reasonably believed that the foreclosure by a U.S. lender had extinguished any prior interest and that King Holdings held valid title. When I inquired about next steps, an OFAC representative indicated that no further action was required at that time. King Holdings and I fully cooperated with all OFAC requests, including responding to an administrative subpoena.

6. On or about November 24, 2025, OFAC issued a Penalty Notice imposing a civil monetary penalty of $4,677,552 against me personally.

7. This penalty amount vastly exceeds the value of the Blackheath Property (sold for $1,430,000 in March 2024) and any economic activity related to it. Enforcement of this penalty would cause me immediate and irreparable harm, including severe financial hardship that could jeopardize my finances, credit, and ability to support my family. I do not have liquid assets sufficient to pay or secure this amount without extraordinary distress.

8. No sanctioned individual received any economic benefit from King Holdings' transactions with the Blackheath Property. The foreclosure proceeds went to the U.S. lender, and the ultimate sale was to an innocent third-party buyer.

9. I believe that the Penalty Notice is unlawful for the reasons stated in the Complaint and Motion filed in this action, including that no violations occurred due to my status as a bona fide purchaser without notice and that the penalty is grossly disproportionate.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed on this 23rd day of January, 2026, in Duluth, Georgia.

 /s/ Sahib Singh Arora_____ Sahib Singh Arora, M.D.

EXHIBIT A



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

## **PREPENALTY NOTICE**

**ENF 891989**

Sahib Singh Arora
9440 Riverclub Parkway
Duluth, GA 30097
sahib3@gmail.com

Dear Dr. Arora:

The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) has reason to believe that you have engaged in conduct prohibited by executive orders and/or regulations promulgated pursuant to the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq*.  As described further below, OFAC has reason to believe that you dealt in the property or interests in property of Specially Designated National (SDN) Karina Yurevna Rotenberg, in violation of the Russian Harmful Foreign Activities Sanctions Regulations (RuHSR), 31 C.F.R. part 587 (the "RuHSR Violations").  OFAC also has reason to believe that you failed to furnish complete information relative to certain acts or transactions, in violation of the Reporting, Procedures and Penalties Regulations (RPPR), 31 C.F.R. part 501 (the "RPPR Violation").

The sum of the statutory maximum penalties for the RuHSR Violations and the RPPR Violation is $4,677,552.  OFAC has found that this matter was not voluntarily self-disclosed and that your conduct was egregious.  Accordingly, pursuant to OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501 app. A (the "Guidelines"), the base penalty for the RuHSR Violations is the statutory maximum.  In light of the application of the General Factors Affecting Administrative Action (the "General Factors") set forth in the Guidelines, OFAC intends to impose on you a civil monetary penalty in the amount of **$4,677,552**: $4,604,676 for the RuHSR Violations, which represents the base penalty, and $72,876 for the RPPR Violation.

### **Conduct and Apparent Violations**

The apparent violations for which this Prepenalty Notice (the "Notice") is being issued involve dealings in the real property located at 2195 Blackheath Trace in Alpharetta, Georgia (the "Blackheath Property").  The Blackheath Property was at all relevant times blocked property owned by Rotenberg, an individual designated pursuant to Executive Order 14024 ("Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation") on March 3, 2022.  Pursuant to § 1 of Executive Order 14024, blocked property may not be transferred, paid, exported, withdrawn, or otherwise dealt in.

On January 3, 2023, King Holdings, LLC was party to a deed with the intended effect of transferring ownership of the Blackheath Property to King Holdings following a foreclosure auction.  At all relevant times, you managed and held an ownership stake in King Holdings.  In light of your relationship to the company, OFAC spoke with you by phone on April 3, 2023 to explain that the Blackheath Property was blocked and the restrictions arising from this status, including that the property could not be dealt in without authorization from OFAC.  Later that day, OFAC sent you an email conveying the same information, to which you responded confirming receipt.  OFAC also emailed you the following day, April 4, 2023, explaining how you could apply for a license on behalf of King Holdings seeking to have the earlier transfer validated.  However, neither you nor King Holdings ever applied for such a license nor otherwise sought authorization to deal in the property.

On or about April 13, 2023, you executed, on behalf of King Holdings, an $872,338 security deed against the Blackheath Property from AmeriFirst Financial, Inc. in order to finance renovations to the Blackheath Property.

On or about August 6, 2023, King Holdings listed the Blackheath Property for sale; as detailed below, efforts to sell the property continued through March 2024.  On December 30, 2023, you executed, on behalf of King Holdings, a purchase and sale agreement to sell the Blackheath Property to a third-party buyer.  Despite the agreement's warranty that the seller was to convey "good and marketable title" to the Blackheath Property, which you knew was blocked, you did not inform the buyer or any other party involved with the sale of the property's blocked status.

OFAC sent King Holdings an Administrative Subpoena on February 1, 2024, requesting, *inter alia*, a detailed description of all dealings directly or indirectly involving King Holdings in or related to the Blackheath Property since January 3, 2023.  The response, whose accuracy and completion you certified under penalty of perjury, did not mention the then-pending sale of the Blackheath Property.  OFAC also sent King Holdings a cease-and-desist order on February 1, 2024, reiterating the applicable RuHSR prohibitions and instructing King Holdings to stop engaging in activities in violation of the RuHSR.  On March 5, 2024, King Holdings certified through its counsel its compliance with the terms of the cease-and-desist order.

On or about March 13, 2024, you closed, on behalf of King Holdings, on the sale of the Blackheath Property to the third-party buyer for $1,430,000.

OFAC has identified two apparent violations of § 587.201(a) of the RuHSR and one violation of § 501.602(a) of the RPPR, all of which occurred after you received clear and actual notice that the Blackheath Property was blocked and could not be dealt in without authorization from OFAC (*see also* Table 1 in the Appendix below):

> RuHSR Violations
> - On or about April 13, 2023, you executed on behalf of King Holdings an $872,338 security deed against the Blackheath Property from AmeriFirst Financial, Inc.
> - On or about March 13, 2024, you closed on behalf of King Holdings on the sale of the Blackheath Property to a third-party buyer for $1,430,000.

RPPR Violation
- On or about March 1, 2024, you certified under penalty of perjury the accuracy and completion of King Holdings' response to OFAC's Administrative Subpoena dated February 1, 2024.  In response to a question about all dealings in or related to the Blackheath Property directly or indirectly involving King Holdings since January 3, 2023, the response failed to note ongoing efforts to sell the Blackheath Property.

## Penalty Calculation and Analysis of General Factors

Statutory Maximum Penalty

Section 206(b) of IEEPA, 50 U.S.C. § 1705(b), as adjusted pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, provides, in part, for a maximum civil monetary penalty for each violation of IEEPA not to exceed the greater of $377,700 or an amount that is twice the amount of the transaction that is the basis of the violation with respect to which the penalty is imposed.

Section 4 of the Guidelines provides that $72,876 is the maximum civil monetary penalty applicable to failure to furnish information pursuant to 31 C.F.R. § 501.602 where OFAC has reason to believe that the apparent violations involve transactions valued at greater than $500,000.  31 C.F.R. part 501 app. A(IV)(A).

Accordingly, the statutory maximum civil monetary penalty in this matter totals **$4,677,552**, representing the sum of (i) the maximum civil monetary penalties related to the two RuHSR Violations in the amount of $4,604,676, and (ii) an RPPR civil monetary penalty of $72,876 for failing to comply with a requirement to furnish information pursuant to an OFAC Administrative Subpoena.

Base Penalty Calculation

As described more fully in the Guidelines, in determining a proposed civil monetary penalty, OFAC first calculates a base civil monetary penalty amount based on whether the RuHSR Violations were voluntarily self-disclosed to OFAC and whether the case is determined to be "egregious."  Pursuant to the Guidelines, OFAC has determined that you did not make a voluntary self-disclosure and that the RuHSR Violations set forth above constitute an egregious case.  The determination of egregiousness is based on an analysis of the applicable General Factors, with substantial weight given to General Factors A, B, C, and G, as described below, and with particular emphasis on General Factors A and B.  Additionally, OFAC has determined that assessing a penalty for the RPPR Violation is appropriate.

Accordingly, the base penalty for the RuHSR Violations equals the sum of the statutory maximum civil monetary penalty amount for each Apparent Violation, which in this case totals $4,604,676 (*see* Appendix below).  Together with an RPPR civil monetary penalty of $72,876

for failing to comply with a requirement to furnish information pursuant to an OFAC Administrative Subpoena, the total base civil monetary penalty totals $4,677,552.

<u>Analysis of General Factors and Proposed Penalty</u>

Pursuant to the Guidelines, OFAC may adjust the base civil monetary penalty amount to reflect applicable General Factors, each of which may be considered aggravating or mitigating and may therefore result in adjustments to the proposed penalty.

In analyzing the General Factors, OFAC focused on the following:

- **Willful or Reckless Violation of Law (Factor A)**.  You acted willfully by dealing in the Blackheath Property for nearly a year—including by executing on behalf of King Holdings a loan agreement to renovate the property and closing on the sale of the property to a third party—despite receiving clear and actual oral and written notice from OFAC that all dealings in the property were prohibited without authorization from OFAC.  Despite this notice, you continued to deal in the Blackheath Property and eventually executed an agreement on behalf of King Holdings to sell it to a third party from whom you apparently concealed its blocked status.  At no point did you seek authorization from OFAC.  You also willfully certified the accuracy and completeness of a subpoena response by King Holdings that was inaccurate and incomplete.  Your dealings in the Blackheath Property for nearly a year constituted a pattern of conduct.

- **Awareness of Conduct at Issue (Factor B)**.  You were aware at all times of your conduct involving the Blackheath Property.

- **Harm to Sanctions Program Objective (Factor C)**.  OFAC may provide notice to U.S. persons in possession or control of blocked property both to ensure the proper administration of such property and as a prophylactic measure to prevent harm from coming to parties that may be at risk of inadvertently dealing in it.  By continuing to deal in the Blackheath Property despite receiving such notice, you significantly damaged the integrity of the RuHSR and placed multiple third parties at risk of potential economic harm and civil liability.

- **Cooperation with OFAC (Factor G)**.  You certified an inaccurate and incomplete subpoena response by King Holdings.

After considering the General Factors summarized above and your failure to furnish information in response to an Administrative Subpoena, and pursuant to 31 C.F.R. § 502.602, 31 C.F.R. § 587.701, and 31 C.F.R. part 501 app. A(IV)-(V), OFAC intends to impose upon you a civil monetary penalty in the amount of **$4,677,552** for the RuHSR Violations and the RPPR Violation.

OFAC may adjust the proposed civil monetary penalty amount set forth above based on evidence presented in any response by you to this Notice, any additional facts otherwise made available to

OFAC, and/or any modification resulting from further review and reconsideration by OFAC of the proposed civil monetary penalty in light of the General Factors.

## Subsequent Proceedings

1.  You have the right to provide a written response to OFAC within 30 days of the service of this Notice.  Such written response to this Notice need not be in any particular form, but it must be typewritten and contain the heading "Response to Prepenalty Notice" and the OFAC case identification number (ENF 891989).  It should contain a response to the allegations herein, either defending against the alleged violations or admitting the violations.  Should you admit the violations, your response may offer reasons for why the relevant portion of the proposed penalty should not be imposed, or, if imposed, why the relevant amount should be less than that proposed in this Notice.  Any written response should refer to the General Factors set forth in the Guidelines, and it should provide any other information or evidence that you deem relevant to OFAC's consideration of this matter.  The response should be addressed to:  Patrick Hernandez, Office of Foreign Assets Control, Freedman's Bank Building, U.S. Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220.  A copy may be sent by email, but the original also must be sent to OFAC by mail or courier and must be postmarked or date-stamped.  Any respondent should retain a receipt or other evidence that shows the date you sent the response to OFAC.  **Any written response must be postmarked no later than 30 days after the date of service of this Notice.**[1]  After receiving and considering any written responses, OFAC may issue a Penalty Notice in accordance with § 587.701, finding a violation and assessing a civil monetary penalty.

2.  In the event that you elect not to respond within 30 days, OFAC will conclude that you have decided not to submit any new facts or explanations for OFAC's consideration.  In such instance, OFAC may issue a Penalty Notice in accordance with § 587.701, finding a violation and assessing a civil monetary penalty.

3.  Should you seek to resolve this matter absent any final agency finding of violation, you may initiate settlement negotiations by contacting the OFAC staff member named below under "Contact Person," or by submitting a written offer of settlement to OFAC, at any time during the civil penalty process.  If the negotiations result in settlement within the time period set forth in this Notice, settling persons will not be required to make a written response to this Notice which will be withdrawn without a formal determination of violation.  Otherwise, the period specified for written response to this Notice remains in effect unless additional time is granted by OFAC.

## Collection

The RuHSR and the RPPR provide that this matter may be referred for administrative collection measures by the United States Department of the Treasury to the United States Department of Justice for appropriate action to recover the penalty in a civil suit if any penalty assessed is not paid within 30 days of the mailing of the written notice of the imposition of the penalty.

---

[1] The date of service of this Notice is the date of receipt of the email that includes this Notice.

Please note that 31 U.S.C. § 7701 requires that a person assessed a penalty by a federal agency furnish a taxpayer identification number/Social Security Number.  OFAC hereby discloses OFAC's intent to use such number for the purposes of collection and reporting on any delinquent penalty amount in the event of a failure to pay the penalty imposed.

**<u>Contact Person</u>**

If you have any questions concerning this matter, please feel free to contact Patrick Hernandez at (202) 695-5735 or <u>Patrick.Hernandez@treasury.gov</u>.  Please have the ENF number listed at the top of this Notice available when you call.

Sincerely,

Lisa M. Palluconi
Acting Director
Office of Foreign Assets Control

**ENF 891989** **Page 7 of 7**
**Sahib Singh Arora**

**APPENDIX**

### Table 1: RuHSR Violations and RPPR Violation

| Date | Category | Amount | Description | Maximum Penalty |
|------|----------|--------|-------------|-----------------|
| 4/13/2023 | RuHSR Violation | $872,338 | Executed security deed on behalf of King Holdings | $1,744,676 |
| 3/1/2024 | RPPR Violation | - | Certified accuracy and completeness of King Holdings' subpoena response, which failed to note ongoing efforts to sell the Blackheath Property when asked about all dealings in the property | $72,876 |
| 3/13/2024 | RuHSR Violation | $1,430,000 | Closed on sale of the Blackheath Property to a third party on behalf of King Holdings | $2,860,000 |
| **TOTAL** | | **$2,302,338** | **TOTAL** | **$4,677,552** |

EXHIBIT B



# OBERHEIDEN PC

**ATTORNEYS**

**DR. NICK OBERHEIDEN**
Washington D.C., New York

**LYNETTE S. BYRD**
Texas

**ELIZABETH K. STEPP**
New York, Texas

**P. COVARRUBIAS MEYER**
Texas

**HON. BRIAN KUESTER**
Oklahoma

**JOHN W. SELLERS**
Maryland

**MICHELE A. RATCLIFFE**
Texas

**LINDA JULIN MCNAMARA**
Florida

**WILLIAM H. NEWMAN**
New York, Georgia, Virginia, Penn.

**JENNIFER W. CORINIS**
Florida, Massachusetts

**ELLEN COMLEY**
Texas, Missouri

**ALINA VENEZIANO**
New York, Nevada, Arizona, Utah

**PAUL STRICKLAND**
California, Washington

**SHREY SHARMA**
New York

**NICHOLAS JOHNSON**
California

**OF COUNSEL**

**HON. MIKE R. POMPEO**
Washington D.C.

**HON. TREY GOWDY**
South Carolina

**HON. DANIEL CAMERON**
Kentucky

**CONSULTANT**

**HON. KEVIN MCCARTHY**

**LOCAL COUNSEL**

**HON. S.A. MARSHALL**
Oregon

**COREY STEINBERG**
Florida

**RICHARD T. SIMMONS**
Louisiana

**DAVID RABEN**
Florida

**ERICK CRUZ**
Florida

**KAREN PICKETT**
Massachusetts

**MICHAEL A. RATAJ**
Michigan

**BILL TUNKEY**
Florida

**KAMILLE DEAN**
Ariz., Utah, Cal., Minn., Col.

**JOSEPH NASCIMENTO**
Florida

**TERRY C. FRANK**
Virginia, North Carolina

440 LOUISIANA STREET, STE 200
HOUSTON, TX 77002

March 25, 2025

Patrick Hernandez
Office of Foreign Assets Control
Freedman's Bank Building
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW,
Washington, DC 20220.

      Re:    Response to Pre-Penalty Notice
             ENF 891989 (King Holdings, LLC and Sahib Singh Arora)

Dear Mr. Hernandez,

Oberheiden, P.C. has been retained by King Holdings, LLC and Sahib Singh Arora to represent them with respect to the Pre-Penalty Notices issued in the referenced matter to each of them. This letter constitutes our combined response to your Notices and proposes a settlement of this matter.

Your Notices each allege that our clients engaged in transactions with property owned or controlled by a Specially Designated Person, identified by OFAC as "Karina Yurevna." This is categorically false. Our clients engaged in a purchase at public auction of a property owned and controlled by a regulated United States financial institution, Wilmington Trust, N.A. Our clients did not purchase the property from "Karina Yurevna" or any other person specially designated. In your Notice to Dr. Arora, the third paragraph mentions a person identified as "Rotenberg." We are unaware of who this person is or what his or her relationship to the transaction might be.

Wilmington Trust, NA is the successor trustee to Citibank, N.A., as Trustee f/b/o registered holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series2006-4 by assignment recorded in Deed Book 66268, Page 485, Fulton County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of NINE HUNDRED SEVENTY-ONE THOUSAND TWO HUNDRED FIFTY AND 0/100 DOLLARS($971,250.00), with interest thereon as set forth therein.

Wilmington Trust foreclosed on the subject property <u>prior to our client's purchase of the property</u>.  At the time of public sale, no SDN person had an ownership interest in the property.  Our clients did not engage in any transaction with Ms. Yurevna.  OFAC's jurisdiction over this property was lost when the financial institution foreclosed on the property and it was no longer property owned by any person.  OFAC could have sought to unwind the transaction, but it did not.  If OFAC's representations are true, the only person or entity that engaged in a transaction in property associated with an SDN was Wilmington Trust, N.A.  This is more astonishing in that, as a regulated financial institution, Wilmington Trust is bound and controlled by the Bank Secrecy Act, including OFAC rules and regulations, and has sophisticated automated compliance programs to guarantee its compliance with OFAC SDN prohibitions.  Why and how did Wilmington Trust. N.A. proceed to foreclose on property owned by an SDN?

OFAC did not seek to nullify and unwind the transaction, which it has authority to do.  This potential OFAC action that was not accomplished does not afford OFAC additional jurisdictional claims over the subject property.

It does appear that OFAC unsuccessfully attempted to perfect its interest in the property by filing, on September 7, 2022, a notice of blocked property with Fulton County, Georgia.  However, that Notice was not effectuated by the County and therefore was insufficient to put any persons on notice of OFAC's claim.  The blocked property notice was ineffective under Georgia law and could not serve as constructive notice. Without constructive notice, the parties could never have known.  In other words: neither King Holdings nor Dr. Arora had any notice or reason to believe they were purchasing a property formerly owned or controlled in whole or in part by an SDN person. Our clients are absolutely bona fide purchasers for value without notice of any SDN interest.

To further demonstrate the complete failure of regulated financial institutions to protect against OFAC violations, two separate title companies conducted OFAC compliance checks on behalf of our clients and neither identified an OFAC compliance violation.  Our clients are entitled to rely on professional title companies to screen OFAC and deliver a clean and whole title, without defects.  Our clients perfectly complied with industry best standards in seeking to comply with OFAC.

Our clients purchased the property on January 3, 2023.  They were not contacted by OFAC until April 2023 – three months after they purchased the property and had already begun rehabilitation efforts for resale.  At the time OFAC contacted our clients, that property was owned by them – not any person on the OFAC sanctions list.

We absolutely do not concede that our clients had no justifiable basis for proceeding with the rehabilitation and sale of the property even after being notified three months late that OFAC was asserting an interest in the property.  The reason is simple:  in April 2023, OFAC had no interest in the property because it did not belong to a person on OFAC's SDN list.  Instead, our clients had certifiable clean title to the property after purchasing it from a bank -  not an SDN listed person.  They had no reason to believe on January 3, 2023 that they were purchasing property in which OFAC asserted any ownership interest.  It is understandable that OFAC could have, at that time, sought to unwind the transaction, but it did not.

As a normal U.S. citizen engaged in a domestic transaction, what due diligence steps should be taken by a purchaser of real estate to be sure they are not purchasing property from a specially designated person?  We find it difficult to image that a U.S. person is independently expected to check the OFAC

database before making a domestic purchase of any property – whether its real estate, a vehicle or jewelry.  Rather, in this case, our clients naturally relied on regulated financial institutions and title companies who regularly check OFAC compliance for each and every transaction.  These institutions include Wilmington Trust, AmerFirst Financial, and Westcor Land Title Insurance Company.  OFAC checks were accomplished by these parties and no hits were identified or, at the very least, made known to our clients.

OFAC's jurisdiction over the subject property in the hands of our clients is questionable at best and arguably non-existent.

The bank published notice of its intent to sell the property on December 29, 2022.  Ms. "Karina Gapchuk" was identified in the Notice of sale as only a tenant.  No person identified as "Karina Yurevna" was advertised as having any interest in the property.  The property was being sold pursuant to a "Security Deed given by Benjamin D Fox and Karina Gapchuk to HomeBanc Mortgage Corporation, dated November 30, 2005, recorded in Deed Book 41750, Page509, Fulton County, Georgia Records." That Security Deed was last transferred to Wilmington Trust, NA, successor trustee to Citibank, N.A., as Trustee f/b/o registered holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series2006-4 by assignment recorded in Deed Book 66268, Page 485, Fulton County, Georgia Records, conveying the after-described property tosecure a Note in the original principal amount of NINE HUNDRED SEVENTY-ONE THOUSAND TWO HUNDRED FIFTY AND 0/100 DOLLARS($971,250.00), with interest thereon as set forth therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of Fulton County, Georgia, or at such place as may be lawfully designated as an alternative.

**General Factors Affecting Administrative Action (31 C.F.R. Appendix A to Part 501)**

### A.  Willful or Reckless Violation?

OFAC has determined that our client's conduct was willful because, after being notified by OFAC that it may have an interest in the property, our clients continued to renovate the property and sold it to a third party.  Pursuant to the Guidelines, willful conduct is "the result of a decision to take action with the knowledge that such action would constitute a violation of U.S. law? Did the Subject Person know that the underlying conduct constituted, or likely constituted, a violation of U.S. law at the time of the conduct?  We submit to OFAC that our clients believed then, as they believe now, that OFAC had and has no valid interest in the property and the property did not in fact belong to an SDN person, neither at the time the property was acquired nor at the time our clients were notified of OFAC's asserted jurisdiction.  Our clients reasonably believed that OFAC had no jurisdiction over the property.

Interestingly, OFAC's chosen violations have nothing to do with our clients purchase of the property.  Instead, OFAC appears to take exception to the subsequent sale of the property.  If OFAC has no basis to accuse our clients of violating U.S. sanctions laws by purchasing the property, how can it assert jurisdiction over the subsequent sale of the property?

Our clients were represented by counsel and no concealment was intended.  This is an isolated transaction and our clients have never had an occasion to be involved with an OFAC matter in the past.

**C.  Harm to Sanctions Program Objectives**

This factor seeks to consider whether there were actual or potential harm to sanctions program objectives caused by the conduct giving rise to the apparent violation.

In this case, there was no economic or other benefit conferred or attempted to be conferred to sanctioned individuals, entities, or countries by our clients conduct.  The property was purchased from a bank for full and fair consideration.  The property had already been foreclosed on.  It is unknown but unlikely that any of the proceeds from the sale accrued to the benefit of the sanctioned individual (there would have had to be sale proceeds in excess of the amount due under the note).

The purchase at public auction of the subject property and the subsequent sale of the property to an innocent third party could not impact the integrity of the U.S. sanctions program and the related policy objectives involved.  The integrity of the sanctions program was infringed, if at all, by the financial institution that had a relationship with the blocked party and the subsequent foreclosure of that property in violation of OFAC rules and regulations.

Further, since OFAC has not sought to sanction our client's for their purchase of the property, it is likely conduct that would have been licensed by OFAC under existing licensing policy, if they had sought such license.

**D.  Individual Characteristics**

Our clients are certainly not sophisticated actors even remotely aware of OFAC or its jurisdiction.  They are property-flippers who conduct a couple of transactions a year.  They are not banking and finance experts and certainly knew nothing about OFAC at the time of these transactions.  In the subject transaction with this property, they actually lost money.

**H.  Timing of Apparent Violation**

This Factor considers the timing of the apparent violation in relation to the adoption of the applicable prohibitions, particularly if the apparent violation took place immediately after relevant changes in the sanctions program regulations or the addition of a new name to OFAC's List of Specially Designated Nationals and Blocked Persons (SDN List).  In this case, OFAC attempted to perfect its interest in the property in September 2022 with Fulton County, but was unsuccessful.  The property was foreclosed and published for sale in December 2022.  Not even the bank holding the apparent mortgage on the property identified it as blocked property.  It is not reasonable to conclude that our clients, who are far less sophisticated, and fully relying on the financial institutions and title companies to represent them, would have reason to know of OFAC's interest in the property in December 2022 / January 2023.

**O B E R H E I D E N - P.C.**

**Settlement Proposal**

Multiple parties made errors in these transactions, including our clients.  Our clients certainly understand now that, when they were notified by OFAC, they should have retained competent counsel experienced in OFAC matters to help them resolve the situation.  For that failure, which they deeply regret, we think a sanction is appropriate, but in a modest amount.  We would propose a $5,000 penalty for each party, King Holdings and Dr. Arora, as well as any necessary injunctive relief.  This settlement offer is based on the fact that our clients did not make any profit on these transactions and no SDN listed person benefitted from the transactions.

We remain fully committed to resolving this matter in the interest of protecting the integrity of the OFAC sanctions programs and are available to discuss further at your convenience.

Sincerely,

John Sellers, Esq
OBERHEIDEN, P.C.
Counsel to King Holdings, LLC and Dr. Sahib Singh Arora

EXHIBIT C



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

# PENALTY NOTICE

**ENF 891989**

November 24, 2025

Sahib Singh Arora
9440 Riverclub Parkway
Duluth, GA 30097
c/o John Sellers, Esq., Sr. Attorney, Oberheiden, P.C.

Dear Dr. Arora:

On February 11, 2025, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) issued a Prepenalty Notice ("PPN") to you regarding (i) your dealings in the property or interests in property of Specially Designated National ("SDN") Karina Yurevna Rotenberg ("Rotenberg"),[1] in violation of the Russian Harmful Foreign Activities Sanctions Regulations ("RuHSR"), 31 C.F.R. § 587 (the "RuHSR Violations"); and (ii) your failure to furnish complete information relative to certain acts or transactions, in violation of the Reporting, Procedures and Penalties Regulations ("RPPR"), 31 C.F.R. § 501 (the "RPPR Violation").[2]

The RuHSR Violations that OFAC has identified involve dealings in the real property located at 2195 Blackheath Trace in Alpharetta, Georgia (the "Blackheath Property"). The Blackheath Property was at all relevant times blocked property owned by Rotenberg, an individual designated on March 3, 2022, pursuant to Executive Order 14024 ("Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation"). Pursuant to section 1 of Executive Order 14024, blocked property may not be transferred, paid, exported, withdrawn, or otherwise dealt in.

At all relevant times, you managed and held an ownership stake in the Georgia real estate investment company King Holdings, LLC. On January 3, 2023, following a foreclosure auction, King Holdings became party to a deed with the intended effect of transferring ownership of the Blackheath Property to King Holdings. Neither the auction of the property nor King Holdings' acquisition of the title was authorized by OFAC. Accordingly, the Blackheath Property remained blocked throughout this period pursuant to § 587.202(a) of the RuHSR, which, as described further below, specifies that unauthorized transfers of property blocked pursuant to Executive Order 14024 are null and void.

---

[1] Also known as Karina Gapchuk Fox.
[2] Pursuant to 31 C.F.R. § 587.402, "Unless otherwise specifically provided, any amendment, modification, or revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by OFAC does not affect any act done or omitted, or any civil or criminal proceeding commenced or pending, prior to such amendment, modification, or revocation. All penalties, forfeitures, and liabilities under any such order, regulation, ruling, instruction, or license continue and may be enforced as if such amendment, modification, or revocation had not been made."

In light of your relationship to King Holdings, OFAC spoke with you by phone on April 3, 2023, informing you that the Blackheath Property was blocked and explaining to you the resulting restrictions, including that the property could not be dealt in without authorization from OFAC. Later that day, OFAC sent you an email conveying the same information, to which you responded confirming receipt. OFAC also emailed you the following day, April 4, 2023, reiterating that the Blackheath Property was blocked and explaining how you could apply for a license from OFAC on behalf of King Holdings seeking to have the earlier transfer validated. However, neither you nor King Holdings applied for such a license nor otherwise sought authorization to deal in the property. Instead, you and King Holdings continued to deal in the Blackheath Property without authorization.

On or about April 13, 2023, you executed, on behalf of King Holdings, an $872,338 security deed against the Blackheath Property from AmeriFirst Financial, Inc., in order to finance renovations to the Blackheath Property.

On or about August 6, 2023, King Holdings listed the Blackheath Property for sale; as detailed below, efforts to sell the property continued through March 2024. On December 30, 2023, you executed, on behalf of King Holdings, a purchase and sale agreement to sell the Blackheath Property to a third-party buyer. Despite the agreement's warranty that the seller was to convey "good and marketable title" to the Blackheath Property, which you knew was blocked, you did not inform the buyer or any other party involved with the sale of the property's blocked status.

OFAC sent King Holdings an Administrative Subpoena on February 1, 2024, requesting, *inter alia*, a detailed description of all dealings directly or indirectly involving King Holdings in or related to the Blackheath Property since January 3, 2023. On or about March 1, 2024, you certified under penalty of perjury the accuracy and completion of King Holdings' response to OFAC's Administrative Subpoena dated February 1, 2024, failing to mention the pending sale of the home.

OFAC also sent King Holdings a cease-and-desist order on February 1, 2024, reiterating the applicable RuHSR prohibitions and instructing King Holdings to stop engaging in activities in violation of the RuHSR, including renovations to the Blackheath Property. On March 5, 2024, King Holdings responded through its counsel to the cease-and-desist order, stating that no work had been performed on the property since August 2023, but again failing to mention the pending sale of the home.

On or about March 13, 2024, you closed, on behalf of King Holdings, on the sale of the Blackheath Property to the third-party buyer for $1,430,000.

OFAC has identified the following violations, all of which occurred after you received clear and actual notice from OFAC that the Blackheath Property was blocked and could not be dealt in without authorization from OFAC:

RuHSR Violations

- On or about April 13, 2023, you executed, on behalf of King Holdings, an $872,338 security deed against the Blackheath Property.  By executing the deed, you dealt in the property or interests in property of Rotenberg, a blocked person.  This activity was in violation of § 587.201(a) of the RuHSR.

- On or about March 13, 2024, you closed, on behalf of King Holdings, on the sale of the Blackheath Property to a third-party buyer for $1,430,000.  By closing on the sale, you dealt in the property or interests in property of Rotenberg, a blocked person.  This activity was in violation of § 587.201(a) of the RuHSR.

RPPR Violation

- On or about March 1, 2024, you certified under penalty of perjury the accuracy and completion of King Holdings' response to OFAC's Administrative Subpoena dated February 1, 2024.  By failing to note acts taken in furtherance of ongoing efforts to sell the Blackheath Property, you certified the accuracy and completion of inaccurate and incomplete information.  This activity was in violation of § 501.602(a) of the RPPR.

The PPN proposed a penalty in the amount of **$4,677,552** and advised you of your right to make a written response to OFAC setting forth the reasons why a penalty should not be imposed, or, if imposed, why the amount should be less than that proposed in the PPN.

You responded to the PPN via messages to OFAC personnel and by letter to OFAC between February 12, 2025, and March 25, 2025 (collectively, the "PPN Response").  Below is a summary of the arguments asserted in the PPN Response that relate to the conduct at issue, followed by OFAC's response to each.

## 1. You argue that no violation in fact occurred because the foreclosure process extinguished Rotenberg's interest in the Blackheath Property.

The PPN Response asserts that "at the time of the [January 3, 2023] public sale, no SDN person had an ownership interest in the property … OFAC's jurisdiction over this property was lost when the financial institution foreclosed on the property and it was no longer property owned by any person."

**OFAC's Response:**  OFAC's regulations specify that unauthorized transfers of blocked property—as occurred in this case—are null and void.  Section 587.202(a) of the RuHSR states: "Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 587.201, is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or interest in property."  The local foreclosure does not have the effect of unblocking blocked property.  *See, e.g.*, *Zarmach Oil Servs. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 157 (D.D.C. 2010).

Rotenberg's interest in the Blackheath Property was therefore not extinguished by the foreclosure process.  Indeed, Rotenberg's extant interest in the Blackheath Property was the reason for OFAC's outreach to you in April 2023.  OFAC further explained to you in its April 3, 2023 email that "it is OFAC's position not to recognize unlicensed transfers of blocked property, including through changes in ownership," citing a Frequently Asked Question on OFAC's website dated August 13, 2014.

2.  **You argue that you had neither notice nor reason to believe that the Blackheath Property bore any connection to Rotenberg at the time of King Holdings' January 3, 2023 purchase of the property because the Notification of Blocking of Real Property filed by OFAC with the Fulton County Superior Court Clerk on September 7, 2022 was "not effectuated by the County," and "was ineffective under Georgia law."**

OFAC issued to the Fulton County Superior Court Clerk on September 7, 2022, a Notification of Blocking of Real Property explaining that the Blackheath Property was blocked and could not be dealt in without authorization from OFAC.  Fulton County recorded the notification in its public records system on October 6, 2022.[3]  OFAC understands that while this notification was, in fact, "effectuated" by the county by virtue of its timely recording in county records, the Superior Court Clerk indexed (*i.e.*, associated in county records) the notification using Rotenberg's name rather than attaching the notification to the Blackheath Property's records.  OFAC issues such notifications to provide county governments and the public with notice regarding the prohibitions on dealings involving blocked parcels of real property.

**OFAC's Response:**  The status of the notification under Georgia law and its degree of practical accessibility to you at the time of the January 3, 2023 purchase have no bearing on the violations at issue.  OFAC is not imposing upon you at this time any penalty with respect to the January 3, 2023 purchase.  Rather, the violations at issue all took place after OFAC's April 3, 2023 communications with you in which OFAC stated that the Blackheath Property was blocked and could not be dealt in without authorization from OFAC, which constituted clear and actual notice of the property's blocked status.  Furthermore, OFAC sent you by email on April 3, 2023, a PDF copy of the recorded Notification of Blocking of Property as part of this notice.

3.  **You appear to argue that OFAC should revise its analysis of the General Factors Affecting Administrative Action (the "General Factors") outlined in OFAC's Economic Sanctions Enforcement Guidelines, 31 C.F.R. part 501, Appendix A (the "Guidelines").**

Your arguments with respect to the General Factors are as follows:

i.   <u>Factor A</u>:  This factor addresses the extent to which violations were willful and/or reckless.  OFAC found this General Factor to be aggravating.  You argue that the conduct was not willful because you believed (and continue to believe) that "the property did not in fact belong to an SDN person."

---

[3] The Superior Court Clerk recorded the Notification of Blocking of Real Property at Deed Book 66201, Page 181.

**OFAC's Response:**  As noted above (#1), the Blackheath Property was, in fact, blocked at all relevant times.  OFAC provided prior actual notice to you of the Blackheath Property's blocked status orally and in writing, and the agency explained that the foreclosure process did not extinguish Rotenberg's interest in the Blackheath Property.  OFAC finds reason to believe that your decision to deal in the blocked Blackheath Property after receiving actual notice that doing so would violate the RuHSR, and to provide inaccurate and incomplete information to OFAC in response to an Administrative Subpoena, constitute willful conduct under the Guidelines.

ii.  <u>Factor C</u>:  This factor addresses the extent to which actual or potential harm was done to the objectives of the sanctions program at issue by the conduct giving rise to the violations.  OFAC found this General Factor to be aggravating.  You argue that there was no harm to the sanctions program objectives because (i) there was no economic benefit conferred or attempted to be conferred on any sanctioned person; (ii) the purchase of the property on January 3, 2023, and the subsequent sale to a third party, "could not impact the integrity of the U.S. sanctions program and the related policy objectives involved"; and (iii) OFAC would likely have licensed King Holdings' purchase of the property on January 3, 2023, had such license been sought.

**OFAC's Response:**  These arguments reference certain considerations identified within the Guidelines as some of the factors OFAC may consider in evaluating the harm done to OFAC's sanctions programs as a result of a given violation.  With respect to point (i), OFAC's PPN does not state that any economic benefit was conferred or attempted to be conferred on any sanctioned person.  Rather, the PPN states that you undermined the objectives and administration of the RuHSR by dealing in the Blackheath Property, including by executing an agreement to sell the property to a third party from whom you apparently concealed its blocked status.  This action placed multiple third parties involved with the transaction at risk of potential economic harm and civil liability.

With respect to point (ii), which OFAC understands to proceed from your argument that the foreclosure process extinguished Rotenberg's interest in the Blackheath Property, OFAC refers again to #1 above; the property remained blocked throughout the relevant period.

With respect to point (iii), OFAC is not imposing upon you at this time any penalty with respect to the January 3, 2023 purchase.  Consequently, the question of whether the January 3, 2023 purchase would likely have been licensed is not germane to the conduct at issue.

iii.  <u>Factor D</u>:  This factor addresses "the particular circumstances and characteristics of a Subject Person," including "commercial sophistication," which is defined as "the commercial sophistication and experience of the Subject Person.  Is the Subject Person an individual or an entity?  If an individual, was the conduct constituting the apparent violation for personal or business reasons?"  OFAC did not find this General Factor to be mitigating.

You argue that with respect to Factor D, you are not a sophisticated actor, and that you "knew nothing about OFAC at the time of these transactions."

**OFAC's Response:** You did, in fact, know about OFAC and the blocked status of the property at the time of the conduct at issue as a consequence of OFAC's oral and written outreach to you. As noted in the PPN, OFAC may provide notice to U.S. persons in possession or control of blocked property as a prophylactic measure to prevent harm from coming to parties that may be at risk of inadvertently dealing in it. While OFAC is not required to do this, it may do so where possible, especially if the agency believes a party lacks knowledge of or expertise in the sanctions programs administered and enforced by OFAC. OFAC's outreach was specifically designed to apprise you of circumstances (that the Blackheath Property was blocked) and attendant consequences (that all dealings in the Blackheath Property were prohibited unless authorized) that you might not otherwise have been aware of. In light of the fact that you had clear and actual notice of these circumstances and consequences, OFAC does not consider your arguments to be persuasive and declines to apply this as a mitigating factor.

iv. <u>Factor H</u>: This factor addresses "the timing of the apparent violation in relation to the adoption of the applicable prohibitions, particularly if the apparent violation took place immediately after relevant changes in the sanctions program regulations or the addition of a new name to OFAC's List of Specially Designated Nationals and Blocked Persons (SDN List)." OFAC did not find this General Factor to be mitigating.

You argue that you would not have had reason to know of "OFAC's interest in the property" leading up to, and at the time of, the January 3, 2023 purchase as a result of the above-described circumstances surrounding the recording of OFAC's Notification of Blocking of Real Property (*see* #2) and the apparent failure of third parties, such as Rotenberg's mortgage lender, to identify the Blackheath Property as blocked.

**OFAC's Response:** OFAC is not imposing upon you at this time any penalty with respect to the January 3, 2023 purchase. Consequently, the question of whether you had reason to know of the property's blocked status at that time is not germane to the conduct at issue. However, as discussed elsewhere in this Penalty Notice, OFAC's outreach to you on April 3, 2023, afforded you ample notice of the Blackheath Property's blocked status and the resulting restrictions arising from this status, and the violations at issue all occurred after that outreach.

Moreover, a primary intent of this General Factor is to account for circumstances in which a violation may have occurred soon after an update to OFAC's regulations or the addition to the SDN List of a new party. OFAC added Rotenberg to the SDN List on March 3, 2022, and the first violation at issue occurred on April 13, 2023, well after OFAC's designation of Rotenberg.

After a thorough review of the facts and circumstances pertaining to this matter, OFAC has determined that you violated RuHSR § 587.201(a) and RPPR § 501.602(a), and that a reduction to the proposed penalty amount set forth in the PPN is not warranted.

Accordingly, **a civil monetary penalty in the amount of $4,677,552 is imposed upon you** pursuant to 31 C.F.R. § 587.701 with respect to RuHSR Violations, and pursuant to § IV(B) of the Guidelines with respect to the RPPR Violation.

The issuance of this Penalty Notice constitutes a final agency action, and a civil monetary penalty in the amount of $4,677,552 is imposed.  You must pay this penalty (or make arrangements with the Department of the Treasury's Bureau of Fiscal Service for installment payments) no later than 30 days after the date of service of this Penalty Notice and you must furnish your taxpayer identification number pursuant to 31 U.S.C. § 7701.  OFAC intends to use such information for the purposes of collecting and reporting on any delinquent penalty amount in the event of a failure to pay the penalty imposed.  Payment by check payable to the "U.S. Treasury" in the amount of **$4,677,552 and referencing the above ENF number** can be sent to U.S. Department of the Treasury, Accounting Services Branch, Avery Street A#-G, Bureau of the Fiscal Service, P.O. Box 1328, Parkersburg, West Virginia 26106.  Alternatively, you may pay through Electronic Funds Transfer ("EFT").  Instructions for EFT payment are closed. **Pursuant to 31 U.S.C. § 3717, failure to pay this penalty in a timely manner will result in the accrual of appropriate interest, the imposition of an applicable administrative charge, and, if the payment is more than 90 days past due, the imposition of further penalty charges.**

Please note that 31 C.F.R. § 587.701 provides that this matter may be referred to the United States Department of Justice for administrative collection.

If you have any questions concerning this matter, you may contact Patrick Hernandez, Enforcement Division, Office of Foreign Assets Control, at (202) 695-5735.

Sincerely,

Bradley T. Smith
Director
Office of Foreign Assets Control

Enclosure:    Payment Instructions